JUAN I. GORBEA, Plaintiff and Appellee, v. MARÍA MONSERRATE SANTIAGO ET AL., Defendants and Appellants.

No. 9439. Argued May 7, 1947.—Decided July 16, 1947.

*Raúl Matos* for appellants. *Joaquín Velilla* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Juan I. Gorbea brought, in the District Court of San Juan, an action which was later transferred to the District Court of Ponce, wherein the complaint was subsequently amended.

That pleading alleged, in substance, that in May 1944, the defendants requested his services as a certified public accountant in connection with a certain investigation undertaken by the Treasury Department regarding the income of the predecessor in interest of the defendants for the calendar taxable years from 1935 to 1936 under the Income Tax Act; that by virtue of such request he proceeded to study and prepare the case of the defendants, working sometimes in Ponce and sometimes in San Juan, as well as in certain offices of the Insular Government, by compiling data, books, statements, invoices, public deeds, statements of accounts, pay rolls, bank statements, and other essential documents, on which he worked from May up to the middle of October, 1944; that while he was engaged in such work, on July 13, 1944, notices of deficiencies, amounting to $117,705.21, for the aforesaid years were served on the defendants; that at the instance of the defendants, the plaintiff herein requested an administrative hearing before the Treasury Department, which was granted, and at which he appeared on behalf of the defendants; that on October 9, 1944, the Treasury Department rendered a decision determining the payment of the following tax: $11,607.11 for 1935, and *nothing* for 1936; that upon being notified by the plaintiff, the defendants paid the said sum of $11,607.11 to the public treasury; that after the professional services rendered by the plaintiff had been completed through the acceptance by the defendants of the said administrative decision of the Treasurer of Puerto Rico, the plaintiff on October 20, 1944, demanded payment of his services from the defendants sending them a bill for the sum of $26,524.53; that the defendants have not paid that amount, either in whole or in part, and that the services rendered by him to the defendant heirs are justly and reasonably worth the said sum.

The defendants answered the amended complaint by accepting some of the facts alleged therein, denying others,

and setting up as special and separate defenses "that the plaintiff is not entitled to any compensation for the professional services rendered to the defendants, which are enumerated in the amended complaint, because said services were contracted, between the plaintiff and the defendants, for the sum of $2,500 which was paid by the latter to the former" and "that assuming—a fact denied by the defendants— that said services had not been contracted for any specific sum of money, which is not the case, the plaintiff has received a greater compensation for the professional services rendered to the defendants than said services are really worth."

The case went to trial and the main controversy hinged upon whether a single contract or two contracts for services had existed between the litigants.

The evidence introduced shows that, in or about February 1944, one of the defendants, acting on behalf of all of them, requested the plaintiff to make an audit of the account books of Vicente Usera Laseda, predecessor in interest of the defendant heirs, as it was known that Juan Jusino Serrano, former bookkeeper of the firm, had given information to the Treasury Department regarding certain income of Mr. Usera Laseda that had not been entered in the books. The oral and documentary evidence adduced by both parties is really profuse. It was conflicting on the point of whether there had existed a single contract of employment or whether, on the contrary, there had been two contracts. The lower court, on which it was incumbent to resolve such conflict, in our judgment acted correctly in deciding that there were involved two distinct contracts, and that the sum of $2,500 paid by the defendants to plaintiff only covered the services rendered by him under the first contract. On the other hand, the record fails to show that in settling that conflict said court committed manifest error or was moved by passion, prejudice, or partiality. *Machuca* v. *Water Re-*

*sources Authority,* 66 P.R.R. 174, and *Rivera* v. *López,* 66 P.R.R. 201. That being so, we must respect its finding on this particular. Therefore, the first and second errors assigned have not been committed.

 For the services rendered by the plaintiff under the second contract, the lower court granted to him the sum of $15,914.71, that is, 15 per cent of the amount of the reduction in the deficiencies assessed to the defendants on July 13, 1944.[1] The latter have appealed from the judgment rendered, and this Court must now determine whether or not the above-mentioned sum represents the reasonable value of such services.

If said notices of deficiencies and the documents attached thereto are examined, it will be seen that they include $14,000 for the sale of shares of the American Telegraph and Telephone Company, $12,000 for the sale of shares of the Fajardo Sugar Company, and $140,000 for a supposed increase in capital for the year 1935. They also cover an item of $19,562.41 claimed as deductible for the sale of 1,500 shares of the Banco Comercial de Puerto Rico.

All those items were clearly set forth in the notices of deficiencies and in the enclosures therewith, and it should have been easy for the plaintiff—who on March 29, 1944, rendered a report to the defendants after having made an audit of the books of the heirs, pursuant to the first contract for services— to compile the necessary data in order to controvert them. We say this, bearing in mind the text of the report rendered on March 29 by the plaintiff, from which it appears very clearly that he knew of the sale of 650 shares of the American Telegraph and Telephone Company and of the sale of 225 shares of the Fajardo Sugar Company and that the same produced a net profit of $26,000 to defendants' predecessor. Said report likewise shows that a deduction

---

[1] The $26,524.53 claimed by the plaintiff is equivalent to 25 per cent of $106,098.10, which was the sum deducted from the deficiencies notified by the Treasurer.

amounting to $19,562.41 had been claimed in the income tax return for the year 1935, on account of the loss in the sale of 1,500 shares of the Banco Comercial of Puerto Rico. The only item of which the plaintiff possibly had no knowledge when the notices of deficiencies were delivered to him, may have been the item of $140,000. However, the evidence shows that it was not difficult for him to determine that said lump sum was derived from the lease and mortgage for $60,000 in favor of the Central Aguirre Sugar Co. and from another mortgage for $80,000 in favor of Vicente Usera Laseda under which Mr. Lucas Pérez Valdivieso Torruella and his wife were debtors. In saying this we take into account, not only the examination of the books that the plaintiff had already performed under the first contract of employment—those items repeatedly appear on some of the pages of the account books of the defendant heirs that were presented as exhibits—but also the public deeds which were likewise introduced in evidence (see plaintiff's exhibit 17D.—Deed No. 155 of Voluntary Mortgage, executed in Ponce on September 29, 1925; plaintiff's exhibit 17F—Deed of Cancellation of Mortgage, No. 84, executed in Ponce, on June 29, 1927; plaintiff's exhibit 17G—Deed Acknowledging Payment, No. 122, executed in Ponce, September 6, 1927; and plaintiff's exhibit 29—Deed of Lease, Loan, and Rescission of Sublease, No. 23, executed in Ponce on April 10, 1924) and which were furnished to the plaintiff by the defendants.

In addition to determining the necessary evidence to controvert the deficiencies notified to the defendants, the work of the plaintiff under this second contract of employment was confined to holding some interviews, addressing several letters to the defendants, requesting from the Income Tax Bureau of the Treasury Department the reconsideration of the deficiency determinations and the holding of an administrative hearing, and appearing at that hearing on September 1, 1944. To judge from the stenographic record of said hearing, the lat-

ter did not last long—possibly from one to two hours, and it was also attended by Attorney Raúl Matos on behalf of the defendants—and although it is true that the same produced a favorable result for the defendants, we do not think that in a case like the present one the plaintiff's fees should be fixed on the basis of a percentage of the sums which were reduced from said deficiencies.

Taking into consideration the foregoing, we are of the opinion that the value of the professional fees of the plaintiff for the services rendered by him under the contract mentioned in the complaint, should be reduced from $15,914.71, granted by the lower court, to the sum of $1,000.

However, since we have reached the conclusion that there were involved two separate and independent contracts of employment, we do not think that the lower court erred in adjudging the defendants to pay costs and attorney's fees—the obstinacy of said defendants in refusing to pay any sum to the plaintiff for his additional services is clear—or in fixing said attorney's fees at $1,000. That sum, in our judgment, is reasonable, since the hearing of this case lasted for various days and in the course of the same numerous questions of law were argued.

The judgment appealed from should be modified so as to reduce the amount of the award in favor of the plaintiff to the sum of $1,000 and, as thus modified, the judgment is affirmed.